## Law Union & Crown Insurance Company, Appellee, v. Harry E. Dunn et al., on appeal of Thomas Prather, Appellant.

### Gen. No. 16,059.

SURETYSHIP—*obligation of grantee to indemnify against mortgage indebtedness.* "Whenever the mortgage debt forms a part of the consideration and is deducted from the purchase money, the grantee is bound to the extent of the property, to indemnify the grantor, but is not personally liable for the mortgage debt."

Foreclosure. Appeal from the Circuit Court of Cook county; the Hon. MERRITT W. PINCKNEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed January 16, 1912.

MATTHEWS S. BRADLEY, for appellant; GOODMAN, FRANK & COLBERT, of counsel.

WILSON, MOORE & MCILVAINE, for appellees.

MR. JUSTICE SMITH delivered the opinion of the court.

This appeal is from a foreclosure decree of the Circuit Court, foreclosing a mortgage of $25.000 upon lot 22 in the subdivision of lots 67 to 70 in the east part

Law Union & Crown Ins. Co. v. Dunn, 167 Ill. App. 22.

of Ellis addition to Chicago. The question presented arises on that part of the decree which directs that the east 170 feet of the lot shall be first sold to satisfy the mortgage.

The lot has a frontage on Ellis avenue of 66 feet and a depth of 243 feet. The east 170 feet of the lot are improved by a four story twelve flat building, having a frontage of 66 feet and a depth of about 110 feet.

The entire lot became the property of John W. Ulm, subject to the mortgage of $25,000. By a warranty deed, dated May 20, 1908, and recorded July 18, following, Ulm conveyed to appellant, Thomas Prather, the easterly 170 feet of the lot, with the building thereon, subject to the encumbrance of $25,000. The undisputed evidence is that the land and the building located on the easterly 170 feet of the lot were worth from $66,000 to $75,000.

On June 1, 1908, Ulm conveyed by warranty deed to appellee, John U. Hoffman, lot 22, except the easterly 170 feet thereof. The deed was one of general warranty, and in it no reference was made to the encumbrance of $25,000. The price paid by Hoffman was $4,000. On the same date Hoffman by a trust deed conveyed the westerly 66 feet of lot 22 to the Chicago Title & Trust Company, trustee, to secure a note for $3,000, payable in five years, with interest at six per cent. The trust deed contained covenants of general warranty, and made no mention of the $25,000 encumbrance. The note secured by the trust deed to the Chicago Title & Trust Company is owned by appellee, Maria A. Warren.

As to the transaction by which appellant Prather became the owner of the east 170 feet of the lot and improvements thereon, the evidence shows that he traded a ranch in California therefor. Prather was informed in that transaction that there was an encumbrance of $25,000 on the property which fell due the 21st day of May, 1908. He inquired whether he

could renew it, and subsequently after the trade was closed, Prather requested appellee, Hoffman, to arrange a loan for $25,000 at the best rate obtainable.

Ulm testified that Prather was to assume the mortgage, and that he asked if he could renew it, and that Ulm told him he could not answer that question, but presumed that it could be renewed. Ulm further testified before the master that he offered the property, subject to this $25,000, for the California ranch, provided the ranch was what they thought it was, and that Prather offered the ranch to him for the equity in the building subject to the $25,000 mortgage; and the trade was ultimately made upon this basis. It is clear we think from the evidence that Prather agreed to take the east 170 feet of the lot in question, subject to the $25,000 mortgage. The negotiations finally ripened into a contract, as above indicated, whereby Ulm agreed to convey to Prather in consideration of $10 and other good and valuable considerations the easterly 170 feet of lot 22 above described, subject to the trust deed in controversy securing the $25,000 note, and Prather agreed to convey to Ulm the California ranch in consideration of $10 and other good and valuable considerations.

In our opinion the correspondence between the parties introduced in evidence shows that Prather at the time the contract and conveyances were made, and subsequent thereto, considered himself bound to take care of the $25,000 mortgage, and that in his mind the entire $25,000 constituted an encumbrance upon the 170 feet and building which he purchased, and formed a part of the consideration which he paid for the property. The parties so construed the contract after it was made, and we think that that construction corresponded with the facts and the real agreement of the parties.

The provision in the decree to which appellant objects is the direction that the east 170 feet of the lot

be first offered for sale separately, and the question thus presented is whether in trading his California ranch for the east 170 feet of the lot on Ellis avenue with the flat building thereon, appellant took the property subject to the entire encumbrance and regarded the encumbrance as a part of the consideration for the property; or, in other words, whether the entire encumbrance was in fact deducted from the price which he was to pay for the property and should in equity be charged against his property instead of against the property of the appellees.

In Pingrey on Mortgages, sec. 1020, it is said:

"Whenever the mortgage debt forms a part of the consideration and is deducted from the purchase money, he (the grantee) is bound to the extent of the property, to indemnify the grantor, but it is not personally liable for the mortgage debt."

In 27 Cyc. 1371 c., it is said:

"Where a part of mortgaged premises is sold under and subject to the mortgage, it becomes primarily liable therefor, and the liability of the remainder of the land, whether retained by the mortgagor or sold to other persons, secondary, so that the rule as to subjecting the parcels in the inverse order of alienation does not apply. But according to some of the authorities the mere recital in the deed that the land sold is subject to the mortgage is not enough to bring about this result, but there must also be something to show that the purchaser becomes responsible for the mortgage debt, as where it is declared to be part of the consideration, or the amount of it is deducted from the purchase price."

The above doctrine is supported and upheld in Drury v. Holden, 121 Ill. 130; Zabriskie v. Salter, 80 N. Y. 555; Brown v. South Boston Savings Bank, 148 Mass. 300, and many other cases.

There is no real controversy here as to the law of the case as we read the briefs. The doctrine of mar-

shalling the assets in the inverse order of alienation, urged by appellant, has no application to this case. Brisco v. Power, 47 Ill. 447; Monarch Coal & Mining Company v. Hand, 197 Ill. 288.

In our opinion the provision of the decree complained of was proper and equitable upon the evidence shown in the record. The decree is affirmed.

*Affirmed.*